IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TAMI A.,[1]

                        Plaintiff,                       Civ. No. 3:23-cv-00067-MK

     v.                                                        **OPINION AND ORDER**

**MARTIN O'MALLEY**,
Commissioner of Social Security

                        Defendant.

_____

**KASUBHAI, Magistrate Judge:**

      Plaintiff Tami A. ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles II and XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, the Commissioner's final decision is affirmed.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiff's claims for SSI and DIB were denied initially and upon reconsideration. Tr. 117-38. She requested an administrative hearing, an appeared before an administrative law judge (ALJ) on March 8, 2022. Tr. 40-65. In a written decision dated March 22, 2022, the ALJ denied Plaintiff's claim for benefits. Tr. 14-31. The Appeals Council denied Plaintiff's subsequent petition for review, rendering the ALJ's decision final. Tr. 1-6. This appeal followed.

## FACTUAL BACKGROUND

Born in 1977, Plaintiff was 42 years old on the amended alleged disability onset date. Tr. 30.[2] She alleged disability as of June 4, 2019, due to combined impairments of fibromyalgia, loose vertebra causing muscle and nerve damage and pain, post-traumatic stress disorder ("PTSD"), hypothyroidism, collapsed arches in both feet and seizures. Tr. 295.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th

---

[2] "Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 11, provided by the Commissioner.

Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 4, 2019, the amended alleged onset date. Tr. 17. At step two, the ALJ determined that Plaintiff had the following severe impairments: left shoulder partial thickness tear, tendinosis, arthrosis and bursitis; fibromyalgia; obesity; psychogenic pseudo-seizures; depression; anxiety; attention deficit hyperactivity disorder (ADHD); and PTSD. Tr. 17. The ALJ also found that Plaintiff had the non-severe impairments of restless leg syndrome, acute pyelonephritis, and a right ankle sprain, but that there was nothing to show these conditions caused significant vocational limitations. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled any listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18.

Prior to step four, the ALJ determined that, despite her impairments, Plaintiff retained the RFC to perform light work with the following limitations: she can never crawl or climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop, kneel, and crouch. With the dominant left upper extremity, she can occasionally reach overhead and frequently reach in all other directions. She can tolerate occasional exposure to extreme cold and vibration. She can tolerate no exposure to hazards such as unprotected heights or moving mechanical machinery. She can understand, remember, and carry out simple, routine, and detailed tasks that can be learned in 30 days or less. She can never perform detailed tasks that require more than 30 days to learn. She can tolerate a routine work setting involving no more than occasional workplace changes. She can never perform rapid pace assembly line work. She can tolerate occasional superficial interaction with the general public; that is, she can work in the vicinity of the public, but she cannot be required to interact with the public as an element of the job. She can tolerate occasional interaction with coworkers, but not in a cooperative or team effort. Tr. 19.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a food service worker because this work does not require the performance of work-related activities precluded by Plaintiff's RFC. Tr. 29. At step five, the ALJ found that based on Plaintiff's age, education, work experience, and residual functional capacity, she could perform jobs that existed in significant numbers in the national economy, including housekeeper, small products assembler, and agricultural produce sorter. Tr. 30. The ALJ therefore concluded that Plaintiff was not disabled. Tr. 31.

In this appeal, Plaintiff argues that the ALJ erred by (I) formulating the RFC without accounting for all of Plaintiff's limitations related to her pseudo seizures; and (II) failing to consider and evaluate all impairments at Step Two.

**DISCUSSION**

**I.   RFC Formulation**

The ALJ did not err in his formation of the RFC. Plaintiff first argues that the ALJ erred because the RFC failed to properly account for the full extent of Plaintiff's deficiencies caused by her pseudo seizures. Pl. Br., at 3 (ECF 15). Plaintiff next argues the ALJ failed to fully address Plaintiff's mental deficiencies in adaptive functioning, as required by SSR 96-8p. *Id*. at 12. Lastly, Plaintiff argues that by failing to obtain a consultative examination, the ALJ formed the RFC without complete evidence of Plaintiff's mental impairments. *Id*. at 13.

**A.   Pseudo Seizures**

The ALJ did not err in formulating the RFC. An RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. 20 C.F.R. § 404.1546(c); *Rounds v. Comm'r Soc. Sec Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC"). The ALJ's findings of fact, as embodied in the RFC, are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *See Burch*, 400 F.3d at 679. Consequently, the issue before the court is not whether the Commissioner could reasonably

have reached a different conclusion, but whether the final decision is supported by substantial evidence.

Plaintiff takes issue with the ALJ's formulation of the RFC because it fails to fully account for the triggers and situations that spur her pseudo seizures. Plaintiff argues the RFC fails to account for her inability to cope with stress and various situational stressors. Specifically, that it fails to account for any environmental triggers such as lighting or loud noises, and that some of the aspects of the RFC are "wholly incompatible" with actions that trigger her seizures. Pl. Br., at 4-10 (ECF 15). Plaintiff reasons that the ALJ's explanation completely ignored the triggers she highlighted in her subjective symptom testimony. *Id*. at 9, 12-13.

The ALJ's formation of Plaintiff's RFC properly considered Plaintiff's subjective symptom testimony. Plaintiff argues the ALJ "provided no explanation with specificity as to whether he accepted or rejected [Plaintiff]'s statements" regarding her seizures. Pl. Br., at 11 (ECF 15). However, the ALJ properly considered all of the available evidence in the record when evaluating Plaintiff's subjective symptom testimony, including a lengthy discussion of Plaintiff's reports of pseudo seizures, as well as treatment history and clinical findings. Tr. 20-29. Not only did the ALJ identify several inconsistencies between Plaintiff's allegations of her physical and mental conditions with objective medical evidence, he also found her activities of daily living (ADLs) to be "inconsistent with and not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 26.

First, regarding Plaintiff's pseudo seizures, the ALJ found "there is no evidence in the medical record of even the frequency of the seizures she currently alleges . . . there is no evidence of her reporting to medical providers the long-lasting postictal states she alleges . . ." Tr. 21. Plaintiff alleges she has one mild seizures every day and one "grand mal" seizure every week. Tr.

54. The court agrees that the record is absent of any objective evidence that Plaintiff has seizures daily. In fact, Kevin J. Jamison, MD, noted that it was "not clear that the events today were in fact seizures, they deftly do not sound like generalized tonic-clonic seizures as the patient is able to describe feeling the seizure come on and being awake the entire experience." Tr. 529. The ALJ then goes on to discuss various instances in the record where she had normal EEG and CT scans, reported having pseudo seizures but improved after taking Lamictal, and then not having any at all after starting massage therapy. Tr. 21; *see* Tr. 784 ("Pt had normal head imaging and lab work"), 790, 793, 838, 855, 896, 941, 945, 1351.

Second, the ALJ found inconsistency with Plaintiff's subjective complaints regarding her seizures and her ADLs. Plaintiff argues the ALJ "provided no reasons to reject Plaintiff's specific testimony regarding seizures," and "ignored the entirety of the evidence involving seizure-based restrictions, including [her] statements without discussion in error." Pl. Br., at 12 (ECF 15). However, the ALJ did not completely ignore Plaintiff's testimony. The ALJ was permitted to consider daily living activities in his credibility analysis. As this court previously has explained, if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); see also *Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work). Here, the ALJ found that Plaintiff "has remained quite active, socially interactive and independent in spite of her alleged physical and mental symptoms." Tr. 26. He cites to instances where she joined and was active at a gym, walked and drove every day, went on vacations, went horseback riding, was the caregiver for her disabled son who lived with her at the time, cleaned and organized her

apartment, dated, used social media, and went shopping. Tr. 27. The ALJ specifically found her activities inconsistent with her own testimony at the hearing. *Id.* At the hearing she stated she could not use a computer, does not drive, that her children are her caregivers, and that her trip to Arizona was because her medical providers suggested her conditions might improve in warmer climate. Tr. 56, 61-63. However, the ALJ found the record showed that she has used a computer for social media; she has driven during the relevant period despite not having license and registration; that she has been her adult children's caregiver during the relevant period; and that she went to Arizona to visit a friend who wanted to reconnect, rather than it being a suggestion from a medical provider. Tr. 27, citing Tr. 1868, 1877, 1889, 1914, 1917, 1951-53, 1959-60, 1735, 1738, 1740, 1986, 2000. Therefore, the ALJ did not ignore Plaintiff's testimony, but instead drew reasonable conclusions from the numerous inconsistencies between her testimony and the record. In turn, the ALJ did not commit harmful error.

Next, Plaintiff argues that the ALJ did not sufficiently address her mental deficiencies in adaptive functioning, or how her limitations caused by seizures were accounted for in the RFC using the three factors listed in SSR 96-8p. *Id.* The ALJ, though not explicitly citing to SSR 96-8p, did follow the requirements of SSR 96-8p. The ALJ discussed in detail Plaintiff's subjective and objective evidence, and cited to several instances in the record to support his conclusions. The ALJ then properly translated and incorporated this evidence into an RFC as required by statute. 20 C.F.R. §§ 416.913(a), 416.945(a)(3); *Rounds v. Comm'r Soc. Sec Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ is not required to recite "magic words" or "incantations" in rejecting evidence. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). "A reviewing court [is] not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Id.*; *Towne v. Berryhill*, 717 F. App'x 705, 707 (9th Cir. 2017) (citing *Batson v. Comm'r of the SSA*, 359 F.3d

at 1190, 1193 (9th Cir. 2004) (if the ALJ provides enough information that the reviewing court can draw reasonable inferences from the record in support of the ALJ's findings, then the ALJ's findings should be upheld)). The ALJ drew a reasonable inference that if Plaintiff cannot tolerate stress, or the "demands of work," this can be accounted for by placing adaptation limitations in the RFC. The limitations the ALJ chose were precluding her from being exposed to no more than occasional workplace changes and no rapid place assembly line work. *Id*. at 4-5; SSR 85-15. Plaintiff states that there is "no evidence established that [Plaintiff]'s stress intolerance was caused by either of these factors." *Id*. at 5. The Commissioner responds by stating "Plaintiff seems to be conflating stressful situations in her personal life with work-related limitations," and the court agrees. The Commissioner cites 20 C.F.R. § 416.945(c) and 20 C.F.R. § 416.945(a) to emphasize the mental and physical demands of work that the ALJ must consider. Plaintiff indicates in various instances in the record that the stressors of life spur her seizures; Specifically, the end of a relationship, the flooding of her apartment which caused damage to her laptop, using her rent money to fix her car, and continuous relationship issues with her daughter and other children. *See* Tr. 1732, 1734, 1738, 1846, 1883, 1978. Here, the ALJ was not required to consider Plaintiff's stressful situations within her personal life. Instead, the ALJ properly considered all the various types of evidence in the medical record, including objective evidence, treatment history, and clinical findings to formulate an RFC that would limit Plaintiff from experiencing work-related stressors.

    **B.**    **Consultative Examination**

Contrary to Plaintiff's argument, a review of the ALJ's decision show that he did not commit harmful error by denying Plaintiff's on record request for a post-hearing psychological evaluation. The ALJ reasoned that because "the medical evidence of record contains counseling

records as well as observations by the claimant's medical providers reporting on the claimant's mental status," there was no need for additional reporting. Tr. 14. Using the medical evidence of record, the ALJ found inconsistencies between Plaintiff's allegations of mental conditions preventing her from working and findings in the record. He stated "the claimant's mental status examination findings throughout the record are largely normal with minimally recorded difficulties with attention or memory other than by claimant's own report. She also presents with normal interactions with her providers with little evidence of social anxiety." Tr. 24. To support this conclusion, the ALJ cited to progress notes from her primary care provider, chart notes from her chiropractor, progress notes from her therapist, and emergency room follow-up visit notes. Tr. 24-26; Tr. 868, 1241, 1340, 1373, 1445, 1450, 1615, 1622, 2157, 2207.

Plaintiff argues the record contains no "psychological examination of [Plaintiff], or an opinion from a physician after evaluating Plaintiff's mental impairments and RFC." Pl. Br., at 13 (ECF 15). Plaintiff is correct in that there is no opinion from a physician evaluating her vocational capacity based on her mental impairments; However, the record does contain treatment notes and observations from various medical providers regarding Plaintiff's mental condition and daily life. The record contains hundreds of pages of observations from Plaintiff's Qualified Mental Health Professional who detailed their sessions. Tr. 1815-2050. These sessions largely discuss Plaintiff's mental health struggles due to stress from interpersonal relationships with family. *See* Tr. 1882, 1891, 1975-78, 2036. Furthermore, despite Plaintiff's argument that there was no psychological examination of her symptoms, the record shows that Plaintiff did meet with a psychologist. Tr. 1340. Heather Tahler, PsyD, met with Plaintiff, where Plaintiff directly asked her to write a prescription for anti-depressants because she "needed to speak with [the psychologist] before attaining anti-depressants." Tr. 1445. The psychologist educated Plaintiff about the role of

Page 11 – OPINION AND ORDER

providers, specifically educating her about "not prescribing medication." *Id*. Plaintiff then indicated, as the ALJ states, she did not want any further interventions or appointments with the psychologist. Tr. 24-25. Using the medical evidence of record, the ALJ concluded Plaintiff's "limited mental health treatment history, her overall normal performance on mental status examinations, and her largely cooperative interactions with her providers mitigate against more restrictive cognitive, social, or adaptive limitations than those set forth in the [RFC]." Tr. 26. Thus, the ALJ considered Plaintiff's limitations together with the medical information available to form an RFC that he was responsible for making. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (determining RFC "is the responsibility of the ALJ") (internal citation omitted). The "ALJ was not required to seek input from a medical expert because the ALJ was able to make a determination supported by substantial evidence." *Foster v. Astrue*, Case No. CV-09-307-JPH, 2011 U.S. Dist. LEXIS 51672, 2011 WL 1807426, at *8 (E.D. Wash. May 11, 2011). As explained in *Foster*, "[t]here are two instances where the opinion medical expert is required: (1) when equivalence to a listing is at issue at step three; and (2) when the record is ambiguous regarding the onset date. *Id*. *See* SSR 83-20; *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). Neither of the circumstances is present here. *Id*. The ALJ did not find the record inadequate, insufficient, or ambiguous. Tr. 14-15, 24-26. Neither does the court. As Plaintiff has not provided argument to rebut the analysis provided in *Foster*, the court rejects Plaintiff's argument that the ALJ's RFC was improperly formulated.

## II.     Evaluation of Primary Headache Disorder at Step Two

The ALJ did not err in evaluating Plaintiff's headaches at Step Two. At Step Two of the sequential evaluation, the ALJ determines whether the claimant has a severe, medically determinable impairment or combination of impairments that meets the durational requirement.

*See* 20 C.F.R. § 404.1520(a)(4)(ii). In assessing severity, the ALJ must determine whether the claimant's medically determinable impairment or combination of impairments significantly limits her ability to do basic work activities. *See Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Step Two is a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (quoting *Smolen*, 80 F.3d at 1290). The ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when [that] conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687 (citation omitted). Harmless error analysis applies to the Step Two determination. *Davenport v. Colvin*, 608 F. App'x 480, 481 (9th Cir. 2015); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

The Ninth Circuit has held when the ALJ has resolved Step Two in a claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant at Step Two if the ALJ considered the impairments when formulating his assessment of Plaintiff's RFC. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting an impairment from the severe impairments identified at Step Two was harmless when Step Two was resolved in claimant's favor). *See also Buck v. Berryhill*, 869 F.3d 1040, 1049 ("[S]tep two was decided in [the plaintiff's] favor after both hearings. He could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a remand."). Such is the case here, as the ALJ found in favor of Plaintiff at Step Two and evaluated her headaches at Step Three. Tr. 19.

The ALJ evaluated Plaintiff's headaches at Step Three when discussing her RFC. Tr. 20-22, 25. To establish the existence of a primary headache disorder, the evidence must document a

Page 13 – OPINION AND ORDER

primary headache disorder diagnosis from an acceptable medical source, who must also provide evidence that the source reviewed the claimant's medical history, conducted a physical examination, and made the diagnosis of primary headache disorder only after excluding alternative medical and psychiatric causes for the claimant's symptoms. SSR 19-4p. Such evidence was not present in the record. The ALJ noted although Plaintiff complained of headaches, she also told providers on several occasions after her amended alleged onset date that her headaches were responsive to medication and have improved. *See, e.g.*, Tr. 855, 1373, 1437, 1686. Plaintiff failed to provide any reasoning as to how her intermittent headaches would affect her work performance. In the hearing, Plaintiff testified that her headaches remain "mild" as long as she stays "airheaded," and that they get worse with increased concentration and general activity. Tr. 53. The only medical providers who discussed Plaintiff's vocational limitations due to her headaches were Qualified Mental Health Professionals Sara Mannino and Rae Daneke. They opined that Plaintiff "would need to take a break every 60 to 90 minutes for at least 15 minutes" due, in part, to her headaches. Tr. 28, citing Tr. 2078. However, the ALJ found these opinions unpersuasive because "Ms. Mannino indicated in her treatment notes that she filled the form out with [Plaintiff] because she was not familiar with [her] capacity to complete each activity listed in the assessment," and that they "'talked through each item on detail before setting on a rating.'" Tr. 29. From this, the ALJ concluded that such assessment appears to be Plaintiff's own assessment of her capacity, rather than the observed opinion of the provider. At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such impairments(s) are severe. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). This burden of proof cannot be substantiated only by a claimant's statement of symptoms or diagnosis. 20 C.F.R. § 416. 908. Plaintiff failed to satisfy her burden of proof.

As noted, the ALJ resolved Step Two in Plaintiff's favor. In addition, the ALJ considered Plaintiff's headaches and concluded they would not preclude work activity. The court finds that the ALJ did not err in his consideration of Plaintiff's headaches. Accordingly, reversal is not warranted.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this <u>8th</u> day of March 2024.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI (He / Him)<br>
United States Magistrate Judge